IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID J. SPILLERS,<br>             Plaintiff,<br><br>             v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>             Defendant. | )<br>)<br>)<br>) Civil Action No. 2:15-cv-001298<br>) JUDGE TERRENCE F.<br>) MCVERRY<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

June 10, 2016

### I.    Introduction

Pending before the Court are cross-motions for summary judgment filed by Plaintiff, David J. Spillers, and Defendant, Carolyn W. Colvin, the Acting Commissioner of Social Security (ECF Nos. 8, 10). Both parties have filed briefs in support of their respective motions (ECF Nos. 9, 11). Accordingly, the motions are ripe for disposition.

### II.    Background

#### A.    Procedural History

Plaintiff was 52 years old at the time of his hearing before the Administrative Law Judge ("ALJ"). (R. 31). Thus, Plaintiff was considered "reaching advanced age", under the regulations. 20 C.F.R. § 404.1563(c). He has a high school education and attended some college. (R. 31, 59). Plaintiff testified he was previously employed as a computer programmer and project manager. (R. 48) However, he stopped working in February 2011 because of injuries he sustained in a motor vehicle accident. (R. 32). Plaintiff lives alone in a two story home with a basement and

1

testified that he spends most of his days checking the stock market, checking his email, and doing household chores such as laundry, which require him to use the stairs to the basement. (R. 55-57). Plaintiff testified that he does not climb the stairs to the second floor because it is too difficult for him, but that he stores Christmas decorations there. *Id.* He also testified that he drives to the grocery store multiple times per day. *Id*. Plaintiff suffers from cervical spine stenosis status post cervical discectomy, bilateral carpal tunnel syndrome, left knee meniscus tear, degeneration of the right shoulder acromioclavicular joint, left hand tremor, tinnitus, obesity, binocular vision, accommodative insufficiency, convergence insufficiency, post concussive syndrome, and cognitive disorder, all of which the ALJ determined to be "severe impairments." (R. 14).

Plaintiff filed an application for disability insurance benefits ("DIB") on July 9, 2012. He alleged his disability as of February 10, 2010, but amended that date at his hearing to February 10, 2011. (R. 32). Plaintiff's application was denied on October 18, 2012, and he filed a request for a hearing on November 8, 2012, which took place on February 11, 2014, before ALJ Douglas Cohen in Seven Fields, Pennsylvania. (R. 30–72). Plaintiff testified at the hearing, as did an impartial vocational expert. On June 7, 2014, the ALJ issued a decision which ruled that Plaintiff was not disabled under the Social Security Act (the "Act") (R. 22). Plaintiff subsequently filed a Request for Review with the Appeals Council, which denied the request on August 11, 2015, which made the ALJ's decision the final decision of the Commissioner of Social Security. Plaintiff then commenced this action.

B. **Medical Evidence Relating to Cognitive Impairments**

Plaintiff has seen a variety of medical professionals regarding his litany of medical conditions. However, because Plaintiff's argument relates only to his cognitive impairments

which resulted from post-concussive syndrome, the Court will only refer to the medical information regarding that ailment.

Plaintiff applied for DIB after he had sustained injuries in a motor vehicle accident on February 10, 2011. Medical records from West Penn Hospital indicate that Plaintiff injured his right upper forehead in the accident. (R. 221-224). At the hospital, Plaintiff underwent a CT scan that showed no evidence of fractures to the skull, facial bones or cervical spine. (R. 225). The CT scan also reflected "no acute intracranial trauma." (R. 240). The medical records also indicate that Plaintiff had degeneration of the cervical spine at the C5-C6 level with moderate-to-severe stenosis. (R. 227).

Thereafter, Plaintiff consulted with a chiropractor, Dr. Donald Nebel. On March 3, 2011, Plaintiff indicated on his "Neck Disability Questionnaire" that he has a "fair degree of difficulty concentrating when [he] wants to," and that he "cannot do [his] usual work." (R. 275). On May 6, 2011, Plaintiff's questionnaire indicates he could "concentrate fully when [he] wants," but Plaintiff reported that he still "[could] not do [his] usual work." (R. 254). On August 24, 2011, Dr. Nebel's office noted that Plaintiff had moderate memory issues and mild issues forgetting numbers, tasks, and names. (R 247).

Approximately one year after the auto accident, on February 25, 2012, Plaintiff underwent a cervical discectomy and fusion at the C5 and C6 levels. The surgery was conducted by Dr. Adnan Abla, M.D. According to the medical reports, Plaintiff tolerated the surgery, and was discharged the following day with instructions to wear a soft collar for two weeks. (R. 298).

Around the same time, Plaintiff saw Dr. Jamie Pardini regarding his concussion and cognitive difficulties. (R. 374). During his time with Dr. Pardini, Plaintiff took neurocognitive tests, namely the imPACT test and the PCSS test. Dr. Pardini's notes indicate that Plaintiff took

imPACT tests on January 1, February 22, May 11, June 4, and July 25, 2012. His cognitive efficiency numbers were measured as .22, .32, .31, .36, and .35, respectively. (R. 370). The report indicates that higher cognitive efficiency numbers denote better cognitive performance. *Id.* According to the report, a high score is .70, a mean score is .34, and a low score is below .20. *Id.* In each test that was accompanied by notes from Dr. Pardini, Plaintiff was assessed as having imPACT scores in the average to high average range. (R. 386, 380, 379, 376, 374). However, these notes also indicate that the pattern of his test scores revealed continued difficulty with delayed memory and ongoing cognitive difficulties. *Id.* On Plaintiff's PCSS tests, he reported his symptoms as generally mild-to-moderate, with a rating of moderate-to-severe regarding his sleeping loss. Dr. Pardini's impression was that Plaintiff continued to struggle with ongoing "signs and symptoms of injury." (R. 374).

On January 31, 2012, Dr. Amish Patel ordered Plaintiff to undergo a cognitive rehabilitation consultation, which Dr. Patel believed would aid Plaintiff's cognitive impairments and difficulty with multitasking and memory. (R. 428). The next day, Plaintiff was also referred to cognitive-speech therapy for his concussion symptoms through the University of Pittsburgh Medical Center ("UPMC") Concussion Program. (R. 429). At his first session, Plaintiff "present[ed] with mild cognitive deficits from concussion." (R. 427). A speech therapist recommended Plaintiff for cognitive rehabilitation therapy one time per week, and opined that Plaintiff presented with "mild-moderate memory deficits." (R. 417; 427). On February 17, 2012, the speech therapist noted that Plaintiff's visual sequencing task required minimal assistance. On March 2, 2012, Plaintiff was assessed as having "rapid typing over 60 words/minute occasional spelling letter omissions due to rapid [sic]." (R. 425). One of Plaintiff's goals during that visit

was to "recognize previously viewed photos," and Plaintiff scored 20/20. *Id.* Another goal was to complete multitask decision making, which Plaintiff could do with minimal assistance. *Id.*

Plaintiff continued to attend these cognitive therapy sessions for a number of months. In June 2012, Plaintiff's deductive reasoning was assessed as 90 percent at the simple level and 80 percent at the moderate level with difficulty understanding statements. (R. 412). On September 19, 2012, the last of these appointments in the record, Plaintiff's "simple to moderate processing" was assessed at 90 percent. (R. 407). Meanwhile, moderate-to-complex processing "required assistance." *Id.* Further, Plaintiff's "memory skills for complex level [were] 80 percent," and "problem solving skills [were] at 80 percent with assistance." (R. 408). The records indicate one of Plaintiff's goals was to "improve higher level functioning and return to work." *Id.*

Plaintiff also met with a psychologist, Vanessa Fazio, Ph.D. regarding his cognitive impairments. On July 25, 2012, Plaintiff saw Dr. Fazio concerning "emotionality, concentration problems, and memory problems." (R. 364). Dr. Fazio noted that Plaintiff "has significant problems with computer tasks which is primarily what he did prior to injury so he has had difficulty returning to work." *Id.* During his appointment with Dr. Fazio, Plaintiff's neurocognitive test results were assessed "between average and above average range with verbal memory in the 61st percentile and visual memory in the 90th percentile, visual-motor speed at the 90th percentile, and reaction time at the 86th percentile." *Id.* Dr. Fazio reported that his "symptoms score [was] slightly worse today at 35, which is in the moderate range." *Id.*

Additionally, Plaintiff visited Dr. Shailen Woods, M.D., a physical medicine rehabilitation specialist, regarding difficulty concentrating and headaches. (R. 443.) In July 2012, Dr. Woods assessed that Plaintiff was awake and oriented, cooperative, and had fluent speech

with normal comprehension and attention. His recall was assessed as "3/3 at 0 min, at 5 min – 1/3." Plaintiff indicated he was not trying to remember. (R. 444.)

Plaintiff visited Dr. Woods' office again in November 2012 for a recheck of his cognitive symptoms. Plaintiff did not report any improvements, and his symptom scale worsened as compared to previous visits. (R. 436). Plaintiff was prescribed continued cognitive rehabilitation. *Id.* Dr. Woods' office assessed plaintiff's mental status as cooperative; his speech was fluent; and his recall was 3/3 at 0 minutes and 3/3 at 5 minutes. *Id.* Dr. Woods noted that extensive neuropsychological testing from Dr. Ted Gorske would be appropriate to aid in future decisions regarding Plaintiff's pending Social Security claim. (R. 438).

In February 2013, Plaintiff underwent the neuropsychological evaluation with Dr. Gorske, as recommended by Dr. Woods. (R. 518.) Dr. Gorske diagnosed Plaintiff with a cognitive disorder and adjustment disorder with depressed mood. (R. 522). While Plaintiff demonstrated difficulty with information processing, verbal encoding, semantic retrieval, and processing speeds, according to Dr. Gorske, Plaintiff was of average-to-above average intelligence and performed normally on most neurocognitive testing. *Id.* Dr. Gorske recommended mindfulness meditation for stress reduction. *Id.* He also noted that Plaintiff could expect no substantial limitation on his activities. *Id.*

Plaintiff also continued to see Dr. Fazio, and on March 11, 2013, she reported that his "test scores in neurocognitive testing [were] within the average to above average range[,]"while noting that her findings were consistent with those of Dr. Gorske. (R. 448). Plaintiff expressed to Dr. Fazio that he was quite frustrated by the length of his recovery and his inability to perform at the same level to which he was accustomed. (R. 450). Dr. Fazio noted that Plaintiff was not able to return to his previous job, but that overall his cognitive functioning was in the average to

above average range. (R. 449). She indicated that Plaintiff continued to be mildly symptomatic, but that most of his symptoms were related to higher level cognitive functioning. *Id.*

## III. Legal Analysis

### A. Standard of Review

The Act strictly limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. § 405 (g). "This Court neither undertakes a de novo review of the decision, nor does it reweigh the evidence in the record." *Thomas v. Massanari*, 28 F. App'x 146, 147 (3d Cir. 2002). Instead, the Court's "review of the Commissioner's final decision is limited to whether that decision is supported by substantial evidence." *Hartranft v. Apfel,* 181 F. 3d 358, 360 (3d Cir. 1999). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010). Importantly, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision, so long as the record supplies substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).

### B. Sequential Evaluation Process

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the

7

requirements of a listed impairment; (4) can return to his or her past relevant work; and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways: (1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments listed in 20 C.F.R. 404, subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or, (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

**C. Discussion**

Plaintiff's lone argument is that the ALJ erred in determining that his post-concussive syndrome failed to establish disability at the third step of the sequential evaluation process. Specifically, Plaintiff contends that the ALJ erred in determining that he was unable to show an impairment under Listing 12.02, which refers to Organic Mental Disorders: Psychological or behavioral abnormalities associated with a dysfunction of the brain. *See id.* In order to meet this Listing, a claimant must satisfy both the "Paragraph A" criteria and the "Paragraph B" criteria, or the "Paragraph C" criteria alone. 20 C.F.R. 404, subpt. P, App'x 1, Listing 12.02. The parties do

not contest that Plaintiff has met the Paragraph A criteria; indeed, he has established a "loss of measured intellectual ability of at least 15 I.Q. points." *See* 20 C.F.R. 404, subpt. P, App'x 1, Listing 12.02, Paragraph A(7). Plaintiff does not contest that he failed to establish the Paragraph C criteria. Therefore, given the applicable standard of review, the only issue for this Court to decide is whether the ALJ based his determination that Plaintiff did not meet the Paragraph B criteria of Listing 12.02 on substantial evidence in the record.

Paragraph B of Listing 12.02 requires a claimant to demonstrate at least two of the following criteria: (1) marked restrictions of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration. Plaintiff contends that he satisfied criteria (1) and (3) above. Examples of activities of daily living include cleaning, shopping, cooking, and maintaining a residence. 20 C.F.R. 404 subpt. P, App'x 1, Listing 12.00(C)(1). The "concentration, persistence or pace" requirement refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. 20 C.F.R. 404 subpt. P, App'x 1, Listing 12.00(C)(3). These limitations may be reflected in both work and other settings. *Id.* "Marked" is defined as "more than moderate, but less than extreme." 20 C.F.R. 404 subpt. P, App'x 1, Listing 12.00(C). A "marked" restriction is not defined by a specific number of tasks unable to be completed, but by the nature and overall degree of interference with function. *Id.* The restriction must "interfere[s] seriously with [the] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C). Notably however, deficiencies that are apparent only in performing complex procedures or tasks cannot satisfy the Paragraph B criteria. 20 C.F.R. 404 subpt. P, App'x 1, Listing 12.00(C)(3).

With regard "concentration, persistence or pace," the ALJ based his determination that Plaintiff did not suffer marked difficulties on substantial evidence from the record. The ALJ found that the Plaintiff only suffered moderate difficulties. (R. 16). In support of that finding, the ALJ referred to exhibits 23F and 17F in the record and correctly noted that Plaintiff's cognitive limitations have not been assessed as more than moderate. *Id.* In particular, as reflected in the exhibits cited by the ALJ, Dr. Fazio found that while Plaintiff may not return to his previous employment, "his cognitive functioning does appear in the average to above average range." (R. 449). On that same page, Dr. Fazio noted that Plaintiff "does continue to be *mildly* symptomatic; however, in [sic] most of his symptoms are related to *higher level cognitive functioning*." *Id.* (emphasis added). However, as stated above, deficiencies only apparent in the performance of complex procedures and tasks are not sufficient to satisfy the Paragraph B criteria. Furthermore, Dr. Fazio noted that Plaintiff's status was consistent with Dr. Gorske's findings of average neurocognitive test scores. *Id*. Dr. Fazio additionally noted Plaintiff was progressing in his cognitive rehabilitation. (R. 450).

In addition, the ALJ accurately noted that Plaintiff's mental status evaluations failed to show significant deficits. (R. 16). In one such evaluation, it was noted that Plaintiff's "speech was fluent," and that he was "cooperative with normal comprehension and attention." (R. 436). Furthermore, Plaintiff's recall was assessed as "3/3 at 0 min; 5 min 3/3." *Id.*

The ALJ also properly relied on other evidence in the record, including Plaintiff's own hearing testimony, that belied Plaintiff's claim of suffering marked limitations. As Plaintiff testified, he engages in activities such as stock market speculation, restoring antique cars, taking intermediate computer classes, receiving high scores in database classes and grades of "B." (R.

16). In sum, upon reviewing the Exhibits, the Hearing Testimony, and the other evidence upon which the ALJ relied, the Court concludes that the ALJ's findings are substantially supported.

To be sure, Plaintiff points to evidence from the record that may be read as contradictory to the findings of the ALJ. He notes, for example, that he would forget instructions from his college professors, that it was taking him much longer to understand the course content, and that he required more time to complete testing. Pl.'s Br. at 9. Additionally, Plaintiff references his convergence insufficiency, which affected his ability to concentrate. *Id.* He also points out his inability to remember much of the computer training he received prior to his concussion. *Id.* at 10. However, the presence of contradictory evidence in the record does not undermine the determinations made by the ALJ, as long as the ALJ's findings were based on substantial evidence in the record and were not clearly outweighed by overwhelming contradictory evidence. *See Morales v. Apfel*, 225 F. 3d 310 (3d Cir. 2000). The evidence upon which Plaintiff relies is simply not sufficient to overcome the well-reasoned and properly substantiated decision of the ALJ.

Regarding Plaintiff's limitations in daily activities, the ALJ also supported his conclusion that Plaintiff had only mild restrictions with substantial evidence. As the ALJ noted, Plaintiff lives alone and independently, does household chores and laundry, prepares meals, and drives to the grocery store to shop multiple times per day. (R. 54– 56). For example, at the hearing, the ALJ asked Plaintiff, "The question was how do you spend your time? What's a typical day?" Plaintiff replied, "Get up, emails, check – try to pay attention to the stock stuff a little bit. And then I work on – work at cleaning up the house some because it's been neglected… I just pace myself until I hurt, then I stop." (R. 56). The ALJ asked further, "So what do you do when you're not doing, you know – check your email, check computer, do household chores?" Plaintiff

answered, "Grocery – you know, I go to the grocery store once or twice a day because I don't like to carry heavy bags." *Id.* Thus, according to Plaintiff's own testimony, upon which the ALJ properly relied, the ALJ was within his rights to determine Plaintiff was only mildly restricted. While the Court acknowledges Plaintiff's argument that he cannot perform many of the activities referenced by the ALJ in an unfettered fashion or on a sustained basis, the ALJ reasonably found otherwise, based upon substantial evidence in the record. Indeed, when Plaintiff testified as to his daily activities – his computer usage, his household chores, his trips to the grocery store, his food preparation – he was describing his average day, which undermines his claim that he could not sustain these activities on a regular basis.

## V.     Conclusion

It is undeniable that Plaintiff suffers from limitations as a result of his medical problems. The Court is empathetic that Plaintiff is unable to return to his previous employment conducting complex computer work, for which he has accumulated a great deal of training and expertise. However, this Court is strictly limited in its review of the ALJ's findings. So long as those findings were based on substantial evidence in the record, this Court is precluded from remanding the case for further consideration. Substantial evidence is not a difficult burden to meet; it does not require that the preponderance of the evidence supports the ALJ's findings, only more than a scintilla. Here, the ALJ based his findings on substantial evidence.

For these reasons, the Court will **GRANT** the Motion for Summary Judgment filed by the Commissioner and **DENY** the Motion for Summary Judgment filed by Plaintiff. An appropriate Order follows.

McVerry, S.J

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID J. SPILLERS,<br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>    Defendant. | )<br>)<br>)<br>) Civil Action No. 2:15-cv-001298<br>)<br>) JUDGE TERRENCE F.<br>) MCVERRY<br>)<br>)<br>)<br>)<br>) |

## ORDER

**AND NOW**, this 10th day of June, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that Defendant's motion for summary judgment (ECF No. 10) is **GRANTED**, and Plaintiff's motion for summary judgment (ECF No. 8) is **DENIED**. The decision of the Administrative Law Judge in the case of David J. Spillers is therefore **AFFIRMED**.

                  BY THE COURT:

                  s/ Terrence F. McVerry
                  Senior United States District Judge

cc: **Brian Patrick Bronson, Esq.**
   Email: bpb@qrlegal.com

   **Colin J. Callahan, Esq.**
   Email: colin.callahan@usdoj.gov